902 F.2d 1570
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Ronald Ray ROMMANN, Defendant-Appellee.
 No. 89-6042.
 United States Court of Appeals, Sixth Circuit.
 May 21, 1990.
 
 Before RALPH B. GUY, Jr. and BOGGS, Circuit Judges, and AVERN COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Ronald Ray Rommann, was indicted for possession with intent to distribute three pounds of marijuana. The evidence against Rommann consisted of marijuana seized after a warrantless search of his vehicle. Claiming that the search was illegal, Rommann filed a suppression motion. The district judge referred the motion to a magistrate who recommended that the motion be granted. The district court adopted the report and recommendation of the magistrate and granted the motion to suppress. Although the court found that there was probable cause to search the vehicle, it found that the vehicle exception to the search warrant requirement did not apply because the defendant's vehicle, at the time of the search, was up on a jack with one wheel removed for repair of a flat tire. The court concluded that the vehicle was not "readily mobile" within the meaning of California v. Carney, 471 U.S. 386 (1985), and thus did not qualify for the vehicle exception to the warrant requirement. We disagree and reverse.
 
 I.
 
 2
 On December 30, 1988, a search warrant was executed at residential premises owned by George Martin. Martin's residence had been under surveillance for several days as a result of an informant's tip that Martin was a marijuana dealer. During the period of surveillance, officers observed Martin loading two green garbage bags, as well as two long guns, into the trunk of an automobile. Officers also observed a number of vehicles come and go and suitcases being unloaded. Among the vehicles seen by the police was defendant's camper-pickup truck bearing Iowa license plates. The police followed some of the vehicles that left Martin's residence and observed activities that suggested marijuana deliveries were being made. One of the vehicles observed was a Hertz rental car. When the vehicle was returned to Hertz, a trained drug-detecting dog was taken to the Hertz agency and the dog made a positive alert on the trunk of the returned automobile.
 
 
 3
 In the course of searching Martin's house, the police found 91 pounds of marijuana in a locked storage room off the garage. After this discovery, all vehicles on the premises were searched, including defendant's camper truck, which was parked in the yard adjacent to the driveway. At the time defendant's truck was searched, the left front wheel had been removed and there was a hydraulic jack under the left front axle and a block of wood under the rim. The search of the truck turned up three pounds of marijuana concealed in a specially constructed compartment between the camper floor and the truck bed, as well as assorted drug paraphernalia.
 
 II.
 
 4
 In support of his motion to suppress, the defendant argued that his camper pickup was not a vehicle, that there was no probable cause for the search, and that there were no exigent circumstances because the vehicle was disabled.[1] The district court rejected the first two arguments and premised its decision on the fact that the vehicle was disabled. Since the defendant did not cross-appeal, there is a question as to whether the first two issues properly are before us. We will nonetheless address them briefly.
 
 
 5
 There can be no serious contention that a licensed pickup truck being used regularly as a vehicle ceases to be a vehicle simply because it has a camper top. Although the defendant slept in his truck on occasion, this does not change the character of the vehicle any more than if the defendant was "living" out of the back seat of a passenger vehicle.
 
 
 6
 The issue of probable cause is a close one since the defendant had no ownership interest in the premises searched and was merely a visitor. We think the district court correctly decided this issue, however. The surveillance and other information from informants led the police reasonably to believe that the Martin residence was a drug storage facility and that deliveries were being made to customers by way of the vehicles that were coming and going from the premises. This suspicion was further confirmed when the 91 pounds of marijuana were found near the garage. The defendant's vehicle was in the immediate vicinity of where the marijuana was stored.
 
 
 7
 The only remaining question is whether the fact that the truck was temporarily up on a jack with a wheel off dictates a finding that the search was illegal. We conclude that it does not, and that the fact situation presented here is sufficiently close to the facts in United States v. Markham, 844 F.2d 366 (6th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 116 (1988), that Markham is controlling here.
 
 
 8
 Given the millions of automobiles on the road and the frequency with which they are used in connection with criminal activities, it is not surprising that automobile searches have generated considerable litigation, not always yielding clear or consistent results. As the Supreme Court observed, "the constitutionality of warrantless searches, especially when those searches are of vehicles, suggest[s] that this branch of the law is something less than a seamless web." Cady v. Dombrowski, 413 U.S. 433, 440 (1973).
 
 
 9
 The automobile exception to the warrant requirement of the fourth amendment is usually said to rest on two justifications:
 
 
 10
 However, although ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception. The reasons for the vehicle exception, we have said, are twofold. 428 U.S., at 367. "Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." Ibid.
 
 
 11
 Carney, 471 U.S. at 391.
 
 
 12
 Defendant would have us read the "ready mobility" requirement to mean that the government must show that it was necessary to make an immediate search or else risk losing the evidence. The Supreme Court has rejected this concept:
 
 
 13
 Subsequent cases make clear that the decision in Carroll was not based on the fact that the only course available to the police was an immediate search. As Justice Harlan later recognized, although a failure to seize a moving automobile believed to contain contraband might deprive officers of the illicit goods, once a vehicle itself has been stopped the exigency does not necessarily justify a warrantless search. Chambers v. Maroney, 399 U.S. 42, 62-64 (opinion of Harlan, J.). The Court in Chambers, however--with only Justice Harlan dissenting--refused to adopt a rule that would permit a warrantless seizure but prohibit a warrantless search. The Court held that if police officers have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct an immediate search of the contents of that vehicle. "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." Id., at 52.
 
 
 14
 United States v. Ross, 456 U.S. 798, 807 n. 9 (1982) (emphasis in original). Consistent with the above-quoted language, our decision in Markham rejected any notion of immediacy being an absolute prerequisite to search. In Markham, the camper, which was the subject of the warrantless search, was locked and its owner was not in the immediate area. In fact, he had just driven away in a different vehicle that was being followed by FBI agents. Given the communication capabilities of police agencies, it is hard to conceive of a situation where a vehicle could not be secured while a warrant was sought.
 
 
 15
 It is important that as much clear guidance be provided to law enforcement agencies in this area of the law as is possible. In this regard, we join in the view expressed by Justice Blackmun:
 
 
 16
 My dissents in prior cases have indicated my continuing dissatisfaction and discomfort with the Court's vacillation in what is rightly described as "this troubled area." Ante, at 817. See United States v. Chadwick, 433 U.S. 1, 17 (1977); Arkansas v. Sanders, 442 U.S. 753, 768 (1979); Robbins v. California, 453 U.S. 420, 436 (1981).
 
 
 17
 I adhere to the views expressed in those dissents. It is important, however, not only for the Court as an institution, but also for law enforcement officials and defendants, that the applicable legal rules be clearly established. JUSTICE STEVENS' opinion for the Court now accomplishes much in this respect, and it should clarify a good bit of the confusion that has existed. In order to have an authoritative ruling, I join the Court's opinion and judgment.
 
 
 18
 Ross, 456 U.S. at 825 (Blackmun, J., concurring).
 
 
 19
 We do not think the automobile exception to the warrant requirement should turn on the condition of the vehicle or whether, as a practical matter, it could be spirited away from the police before a search could be completed. Considerations of factors of this nature would just add more uncertainty as to what is permitted and what is prohibited. We believe the Supreme Court has moved to where the key inquiry is probable cause and, if that is present, most, if not all, auto searches will not require a warrant. It appears that the fact that an automobile is involved has subsumed in most fact situations any requirement for separate and distinct exigent circumstances.
 
 
 20
 We hasten to add that this is not a license to police agencies to make random vehicle searches. As the necessity to secure a warrant is diminished, the scrutiny of probable cause will become heightened.
 
 
 21
 REVERSED and REMANDED.
 
 
 22
 COHN, District Judge, concurs in the result only.
 
 
 
 *
 Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The government argued that the vehicles searched were part of the "premises" to be searched included in the search warrant. The district court rejected this argument, and the government does not argue this issue on appeal